**ALLTRANSPORT INCORPORATED a/c**
**Sterling Novelty Products**
v.
**UNITED STATES.**
**C.D. 3258; Protest Nos. 62/18601–13129.**

United States Customs Court,
First Division.
Jan. 23, 1968.

Schwartz & Lidstrom, Chicago, Ill., (Earl R. Lidstrom, Chicago, Ill., Joseph Schwartz and Barnes, Richardson & Colburn, New York City, of counsel) for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen., (Morris Braverman, Bernard J. Babb, and Brian S. Goldstein, New York City, trial attys.), for defendant.

Before WATSON and BECKWORTH, Judges.

BECKWORTH, Judge:

The merchandise involved in this case consists of handbags imported from Hong Kong and entered at the port of Chicago on April 18, 1961. It was assessed with duty at 21 cents per pound and 17 per centum ad valorem under paragraph 1539(b) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, as manufactures wholly or in chief value of a laminated product of which any synthetic resin or resin-like substance is the chief binding agent. It is claimed to be properly dutiable by virtue of the similitude clause in paragraph 1559 of said tariff act, as amended by the Customs Simplification Act of 1954, at 20 per centum ad valorem under paragraph 1531 of said tariff act, as modified by the General Agreement on Tariffs and Trade, 82 Treas.Dec. 305, T.D. 51802, as bags wholly or in chief value of leather.

The pertinent provisions of the tariff act, as modified and amended, are as follows:

Paragraph 1539(b), as modified by T.D. 54108:

Laminated products (whether or not provided for elsewhere in the Tariff Act of 1930 than in paragraph 1539(b) thereof) of which any synthetic resin or resin-like substance is the chief binding agent:

\* \* \* \* \* \*

Manufactures wholly or in chief value of any product described in the preceding item 1539(b), or of any other product of which any synthetic resin or resin-like substance is the chief binding agent . . . 21 cents per lb. and 17% ad val.

Paragraph 1531, as modified by T.D. 51802:

Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, not jewelry, wholly or in chief value of leather (except reptile leather), or parchment, and manufactures of leather (except reptile leather), rawhide, or parchment, or of which leather (except reptile leather), rawhide, or parchment is the component material of chief value, not specially provided for:

\* \* \* \* \* \*

Bags, baskets, belts, satchels, pocketbooks, jewel boxes, portfolios, and boxes and cases, not jewelry; any of the foregoing not provided for heretofore in this item

. . . . 20% ad val.

Paragraph 1559(a), as amended by the Customs Simplification Act of 1954:

Each and every imported article, not enumerated in this Act, which is

similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

At the trial, a sample representative of the imported merchandise was received in evidence as exhibit 1. It consists of a zippered bag or pouch in the shape of a floppy dog's head, having a handle. The main body of the article is of blue material. Attached are red pieces resembling dog's ears, and pink pieces to two of which are attached black pieces to represent the eyes. A brown portion at the bottom may be intended to represent legs. The article contains two lollypops.

Plaintiff called as a witness Rudi P. Meyer, president of Sterling Novelty Products, importers and manufacturers of plastic products. He engages in buying merchandise, supervising sales, and acting as general manager. He testified that he had been dealing with merchandise such as exhibit 1 for 15 years and that his firm had originally produced a few samples in its own plant to submit to customers before it had the item made in Hong Kong. He said that the merchandise ordered from Hong Kong met the specifications and samples which his firm sent there. After importation he had had occasion to examine the merchandise and compare it with the samples. He found that it was made on the same principles and in the same way as the samples.

Mr. Meyer testified that he had been dealing in the subject of plastics since 1944. He had worked, when plastic sheeting was first produced in this country, with Union Carbide, and before plastic was put in large quantities on the market he had worked with Freudenpac in Germany, who was the basic patent holder of plastic raw material. He said he was capable of examining plastic and determining whether it was laminated or not and that he could do this by feeling if the two sheets together could be separated or if they were one piece. He said that if they could be pulled apart the material was not laminated, but if the material was in one piece it would be laminated. He defined a laminated plastic as a sheeting which consists of two calendered sheetings of plastic that are combined in a hot process to obtain one compound. Based on that definition and an examination of exhibit 1, he stated that there was no laminated piece in the merchandise.

Mr. Meyer testified also that he sells this merchandise to distributors and big operators and that he has seen how it is used. He said that the articles are sold as handbags for children and he had seen children using them as such.

On cross-examination, Mr. Meyer stated he had had considerable experience with plastics and that the merchandise involved here is composed of polyvinyl chloride sheeting. He said that it did not have a calcium carbonate filler, that it only contained as much filling as was needed to produce the colors and the required stiffness. He knew this because for the last 20 years his firm had had plastic sheeting made to its specifications every week. The firm had received a test of the material involved herein from the supplier of the raw material in Hong Kong, but had not had it tested in the United States.

Mr. Meyer testified that synthetic resin was the most important compound of the item; that it formed the plastic sheeting. When asked whether the synthetic resin was the chief binding agent, he said that the term "binding" was never employed "in our commercial use" and that he did not think the synthetic resin was the chief binding agent because there were 8 or 10 different chemicals which formed the sheeting.

Two United States Customs Laboratory Reports were mentioned at the trial and in the briefs. However, they were not offered or received in evidence at the trial. Even though they are part of the official papers, they may not be considered by the court as establishing the truth of the recitals or statements contained therein. United States v. Western Electric Company, 26 Cust.Ct. 531, Reap. Dec. 7954.

In the instant case, plaintiff has the burden of establishing that the merchandise was not properly assessed with duty by the collector under paragraph 1539(b), supra, as a manufacture of a laminated product of which synthetic resin is the chief binding agent, and that it is properly dutiable as claimed under paragraph 1531, supra, by virtue of the similitude clause of paragraph 1559(a), as amended. Brown Boveri Corp., Gehrig Hoban & Co., Inc. v. United States, 53 CCPA 19, C.A.D. 870.

■ No evidence has been presented in this case as to the method of manufacture of the merchandise in Hong Kong, nor as to the materials actually used. Mr. Meyer testified that his firm produced samples by cutting plastic sheeting and that the merchandise produced in Hong Kong met the specifications transmitted by his firm. Such specifications were not placed in evidence, nor did Mr. Meyer testify as to what they were. About all that he stated as to the materials was that polyvinyl chloride was the most important compound in the item and that 8 or 10 different chemicals formed the plastic sheeting. He also stated that he could tell by examination whether a plastic was laminated or not and that there were no laminated pieces in the merchandise. As far as the record discloses, he was not a chemist and had not observed the method of production in Hong Kong and was not in charge of the manufacture of merchandise made by his company. Although he stated that he had considerable experience with plastics, he did not state in what capacity. Normally, the testimony of a person not a chemist on the chemical composition of a product is inadmissible. United States v. C. J. Tower & Sons, 38ᵢ CCPA 131, C.A.D. 450. A responsible executive may testify concerning the operations of his company, but it must be shown that he had acquired the information in the regular course of duty and was in a position to have acquired knowledge of what he testified to. Wm. A. Hausman Co., Inc. v. United States, 57 Cust.Ct. 391, C.D. 2828; Rune Nicklasson, Inc., dba Slima Abrasive Co. et al. v. United States, 57 Cust.Ct. 456, C.D. 2835. In the case last cited, it was held that the witness' testimony as to the method of production was of little probative value since it was not shown that he was in charge of production or had any technical knowledge of the chemical or manufacturing processes.

■ In the instant case also, the testimony of Mr. Meyer, who was not a chemist and had not observed the method of production, is of little probative value and is not sufficient to establish that the merchandise herein was not a manufacture in chief value of a laminated product of which a synthetic resin was the chief binding agent.

■ Furthermore, plaintiff has not established its affirmative case. Even where the collector's classification is shown to be erroneous, plaintiff still has the burden of showing a factual and legal situation which would enable the court to determine which, if any, of the claims of its protest should be sustained. Only after it has made out a *prima facie* case, does the burden of going forward with the evidence shift to the defendant. United States v. Magnus, Mabee & Reynard, Inc., 39 CCPA 1, 7, C.A.D. 455. It is well settled that if articles are enumerated under any provision of the tariff act, they cannot be classified by similitude since that paragraph applies only to nonenumerated articles, nor can resort be had to the nonenumerated provision. Package Machinery Co. v. United States, 41 CCPA 63, 68, C.A.D. 530; United States v. Stouffer Co., 3 Ct.Cust.Appls. 67, T.D. 32351; P. Silverman & Son v. United States, 32 CCPA 99, C.A.D. 292.

"Proof that the collector's classification is wrong does not automatically negate classification under par. 1559 by similitude of use to other enumerated articles; nor does it establish that the articles are n. s. p. f., i. e., not so classifiable as enumerated articles or as nonenumerated articles by virtue of similitude under *any* paragraph of the Tariff Act." J. E. Bernard & Co., Inc. v. United States, 53 CCPA 116, 120, C.A.D. 886. Where an article is unenumerated, it is classifiable by similitude to the enumerated article which it most resembles in use, or if it equally resembles more than one in use, to the one it most resembles in material. S. S. Kresge Co. et al. v. United States, 46 CCPA 100, C.A.D. 707. If it resembles two or more articles in use, plaintiff must establish which article it most resembles in material. Beauti-Vue Products Company v. United States, 55 Cust. Ct. 282, C.D. 2591 (decision on rehearing, 58 Cust.Ct. 360, C.D. 2987).

In the instant case, the record shows that the merchandise is composed of a synthetic resin, polyvinyl chloride, and other materials. Thus, assuming it is not a manufacture in chief value of a laminated product of which a synthetic resin is the chief binding agent, the court may take notice of the probability that it is a manufacture of some other product of which a synthetic resin is the chief binding agent and is provided for in another provision of paragraph 1539(b), supra. Plaintiff's witness admitted that the sheeting contained synthetic resin and other chemicals and that something was used to produce colors and stiffness; therefore, there was something in the material for the synthetic resin to bind. In view of Mr. Meyer's lack of qualifications as a chemist, and lack of knowledge of the method of production in Hong Kong, and in the absence of any chemical analysis of the merchandise, his statements that the merchandise did not contain a filler and that the synthetic resin was not the chief binding agent, are of little probative value.

There is also a lack of sufficient proof that the merchandise most resembles leather bags in use or in materials, as required by paragraph 1559 (a), supra. According to the witness, the merchandise here was sold as handbags for children and was so used. The sample itself bears this out. We may take judicial notice that there are children's handbags made of various materials. J. E. Bernard & Co., Inc. v. United States, supra. Whether or not the merchandise here most resembles in use, or in use and material, a child's leather handbag has not been established by the record. Plaintiff relies on two rulings of the Bureau of Customs, one of which, 94 Treas.Dec. 168, 174 T.D. 54826(27), covers plastic handbags containing no filler, but we have no way of knowing whether the merchandise there was the same as that before the court. The other ruling mentioned, 100 Treas.Dec. 261, 267, T.D. 56426(26), was made under a different statute, Tariff Schedules of the United States. Apparently "plaintiff expects us to accept bald assumption as a substitute for proof with respect to a vital element of plaintiff's case." Beauti-Vue Products Company v. United States, supra. It cannot sustain its burden of proof in that fashion. Cf. Borneo Sumatra Trading Co., Inc. v. United States, 56 Cust.Ct. 166, C.D. 2624 (rehearing granted May 10, 1966).

On the record presented we hold that the merchandise involved herein was properly assessed with duty by the collector at 21 cents per pound and 17 per centum ad valorem under paragraph 1539(b), supra, as manufactures in chief value of a laminated product of which a synthetic resin is the chief binding agent. The protest is overruled and judgment will be entered for the defendant.

WATSON, J., concurs.