**RELIANCE INTERNATIONAL CORP.,**
Plaintiff,

v.

**UNITED STATES, Defendant.**
R.D. 11639; Reappraisement
No. R63/3235.

United States Customs Court.
March 20, 1969.

James G. McGoldrick, New York City, for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Brian S. Goldstein, New York City, trial attorney), for defendant.

RAO, Chief Judge.

The merchandise involved in this appeal for reappraisement consists of boys' cotton knitted shirts imported from Hong Kong and entered at the port of New York. They were entered at the unit invoice price of 90 cents per dozen plus packing, and were appraised at $1.06 per dozen, net, packed.

It was stipulated at the trial that the merchandise does not appear on the Final List promulgated by the Secretary of the Treasury, 93 Treas.Dec. 14, T.D. 54521, and that export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement. Plaintiff claims that the appraised value

includes a commission which is a *bona fide* buying commission and not properly part of the export value.

The special customs invoice received in evidence at the trial as part of the official papers gives the ex-factory price of the merchandise as 90 cents per dozen and lists as export charges: packing, inland freight, storage, insurance, hauling and lighterage, and buying commission "5% on ex-fty". The f. o. b. Hong Kong total is given as $1,428.88. Entry was made by deducting the charges, except packing, from the f. o. b. total.

Written in red ink on the invoice are the words "Appraised at U.S. $1.06 dz, net, packed ADV".

Robert R. Rainer, customs examiner, testified that he made the advisory recommendation of appraisement herein and that he had had the invoice documents before him at that time. In making his recommendation, he had taken into consideration the invoice unit price, the extended total thereof, the various export charges listed, including the buying commission of 5 percent on ex-factory, and the grand total. He said he divided the grand total of $1,428.88 by the invoice quantity of 1,348 dozen and arrived at the appraised value of $1.06 per dozen.

It was stipulated that the advisory appraisement by Mr. Rainer was adopted by the appraiser as the official appraised value.

There was received in evidence as exhibit 2 in this case, an agreement between Reliance Intercontinental Corporation (hereinafter called Reliance) and the Tosho Co., Ltd., Hong Kong Office (hereinafter called Tosho) dated January 1, 1962. It contains the following:

Reliance Intercontinental Corp. hereby appoints the firm of Tosho Co., Ltd., Hongkong Office (Representative: KEIZO FUJIMURA) as a Buying Agent in Hongkong.

The Tosho Co., Ltd., Hongkong Office must visit manufacturers in Hongkong, collect samples, submit those samples to Reliance Intercontinental Corp., and to report regularly about the market situation quoting prices at which the merchandise can be purchased.

Upon instructions from Reliance Intercontinental Corp. the Tosho Co., Ltd., Hongkong Office will place orders with manufacturers, inspect merchandise, and arrange shipment.

The Tosho Co., Ltd., Hongkong Office will be entitled to buying commission of 5%.

The agreement also directed Tosho to quote prices f. o. b. Hong Kong, including the buying commission. The invoices were to be made out on the basis of ex-factory prices and to specify all charges.

In an affidavit received in evidence as exhibit 1, Yasuo Namekawa, president of Tosho, stated that he had been president of that firm for more than 15 years and had personal knowledge of all its business affairs. It was his duty as chief managing officer to supervise the business and commercial relationships and affairs of the company. He stated that Tosho has been engaged in the export and import business in Japan for many years; that it makes purchases of Japanese products and sells them for export to the United States, and that it also acts as agent on behalf of United States buyers for the purchase of Japanese products, and as a shipping agent.

The affiant also stated that since 1959 Tosho has had an agreement with Reliance authorizing Tosho to act as buying and shipping agent for Reliance in Hong Kong and Japan. For such services, it is paid a commission of 5 percent. Employees of Tosho serve as interpreters for visiting buyers, handle details incident to receiving merchandise from manufacturers, inspect such merchandise, arrange for its transportation, gather samples, obtain price quotations, place orders when so instructed by the principal, and make payments for goods and charges. In every instance where Tosho acts for a principal and signs a customs invoice, it has no interest in

the sales price paid to the seller and is compensated solely by the invoiced buying commission.

Mr. Moysh Haddad, president of Reliance, testified that he had purchased the goods involved herein from Fortune Knitting Factory in Hong Kong in May 1962. He said that after he and Fortune Knitting's representative had agreed on the transaction, an employee of Tosho prepared the contract, both parties signed it, and a record of it was made. Thereafter, Tosho inspected the goods, arranged for its shipment from the factory to the United States, and made the payments for the merchandise and inland charges, from a master letter of credit. For its services, Tosho was paid 5 percent of the original price paid for the merchandise.

Two questions are presented for determination herein: First, whether the appraisement is separable so that plaintiff may rely on the presumption of correctness as to all elements of value except the contested item, and second, whether the record establishes that the commission paid to Tosho was a *bona fide* buying commission and thus not properly a part of dutiable export value.

■ Under the so-called separability doctrine, in a proper case, an appealing party in reappraisement proceedings may challenge any one or more of the items entering into an appraisement while relying upon the presumption of correctness of the appraiser's return as to the other elements. United States v. Dan Brechner et al., 38 Cust. Ct. 719, A.R.D. 71, and cases cited; United States v. Gehrig, Hoban & Co., Inc., 54 CCPA 129, C.A.D. 924; United States v. Chadwick-Miller Importers, Inc. et al., 54 CCPA 93, C.A.D. 914; United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, C.A.D. 929. An appraisement is separable where it is at the invoice "first cost" or *per se* price, plus various charges, but not where it is at a single unit price f. o. b., net, packed, unless there is proof in the record showing what the appraiser

did. United States v. Dan Brechner et al., *supra;* United States v. Supreme Merchandise Company, 48 Cust.Ct. 714, A.R.D. 145; S. S. Kresge Co. et al. v. United States, 45 Cust.Ct. 469, Reap. Dec. 9778; Bud Berman Sportswear, Inc. v. United States, 55 Cust.Ct. 574, Reap.Dec. 11056, aff'd United States v. Bud Berman Sportswear, Inc., 57 Cust. Ct. 733, A.R.D. 211, aff'd 55 CCPA 28, C.A.D. 929. An appraisement is not separable merely because the appraised value is the mathematical equivalent of the invoice price plus charges, nor may a buying commission be deducted from the appraised value unless it has been shown that said commission was included in the appraised value. Haddad & Sons, Inc. v. United States, 53 Cust. Ct. 423, Reap.Dec. 10825; Brentwood Originals et al. v. United States, 58 Cust.Ct. 575, R.D. 11258; Manhattan Novelty Corp. v. United States, 54 Cust. Ct. 545, Reap.Dec. 10910; Manhattan Novelty Co. v. United States, 54 Cust. Ct. 561, Reap.Dec. 10919.

■ However, a constructed separation may be effected where there is evidence to show that the appraiser in fact calculated value by adding charges to the invoice unit price or subtracting them from the total invoice price. Bud Berman Sportswear, Inc. v. United States, supra; United States v. Shalom & Co., 57 Cust.Ct. 767, A.R.D. 216, appeal dismissed January 10, 1968; United States v. Gehrig, Hoban & Co., Inc., *supra.* In the *Bud Berman* case, the examiner testified that he calculated value by adding the inland charges as set forth on the invoice to the ex-factory unit price shown therein. In the *Shalom* case, the invoice listed the ex-factory price, various charges, and a 5 percent commission. The merchandise was appraised at $9.555 each, net, packed, but the examiner testified that the appraisement included all charges, of which the item shown as a commission, was one. In the *Gehrig, Hoban* case, the appraiser subtracted figures for what he considered nondutiable items from the total invoice price.

In the instant case, the appraisement as noted on the invoice was at a unit value, but the testimony of the examiner establishes that it was made up of the invoice unit price plus a proportionate share of the charges, including the commission. Therefore, the appraisement may properly be treated as separable and the plaintiff may challenge the inclusion of the commission as a part of the dutiable value, while relying upon the presumption of correctness as to the other elements of value.

A *bona fide* buying commission charged for handling merchandise is not a part of dutiable value. United States v. S. S. Kresge Co. et al., 26 CCPA 349, C.A.D. 39; United States v. Nelson Bead Co., 42 CCPA 175, C.A.D. 590; Stocker & Yale, Inc. v. United States, 60 Cust.Ct. 881, R.D. 11533. Whether a particular item is a *bona fide* buying commission depends on the facts in each case, the burden of proof resting upon plaintiff. Haddad & Sons, Inc. v. United States, *supra*.

Commissions paid by the purchaser to agents for services rendered in procuring the merchandise, inspecting and packing goods, arranging for shipment and acting as a paymaster for account of the buyer, no part of which commissions inure to the benefit of the seller, are buying commissions. United States v. Nelson Bead Co., *supra;* United States v. Gitkin Co., 46 Cust.Ct. 788, A.R.D. 132; Lollytogs, Ltd. v. United States, 55 Cust.Ct. 608, Reap.Dec. 11073; United States v. Supreme Merchandise, *supra*.

In the instant case, the uncontradicted evidence establishes that Reliance appointed Tosho as its buying agent and that Tosho performed the usual services of a buying agent for which it received a commission of 5 percent of the ex-factory price of the merchandise. The purchases were made by Mr. Haddad, representing Reliance, with the employees of Tosho serving only as interpreters and assistants. There is no evidence that Tosho was the seller or acted for the seller or that any part of the commission inured to the benefit of the seller. The evidence presented is sufficient to establish that Tosho was a *bona fide* buying agent. Its commission, therefore, is not properly a part of dutiable export value.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of boys' cotton knitted shirts imported from Hong Kong and entered at the port of New York on September 24, 1962.

2. That the merchandise does not appear on the Final List promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That the merchandise was appraised on the basis of export value as that value is defined in section 402 (b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That the merchandise was invoiced at 90 cents per dozen plus various listed export charges and was entered at the ex-factory unit price of 90 cents per dozen plus packing.

5. That the merchandise was appraised at $1.06 per dozen, net, packed, which is equivalent to the f. o. b. port of exportation price.

6. That the record establishes that the appraiser included in his appraised value the ex-factory unit price plus a proportionate share of the export charges, including a buying commission of 5 percent on the ex-factory price.

7. That during the period involved herein, the plaintiff employed Tosho Co., Ltd., as its agent to assist in the purchase of merchandise and to perform other services in connection with the shipment and payment therefor.

8. That for such services, plaintiff paid Tosho Co., Ltd., a commission of 5 percent on the ex-factory price.

I conclude as matters of law:

1. That export value as that value is defined in section 402(b) of the Tariff

Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That in view of the evidence showing that the appraiser made his appraisement on the basis of the invoice unit price plus export charges which included a 5 percent commission, the appraisement is deemed to be separable and the invoice unit price together with the unchallenged charges are clothed with a presumption of correctness.

3. That the 5 percent commission paid by plaintiff to the Tosho Co., Ltd., was a *bona fide* buying commission which formed no part of the value of the merchandise.

4. That the export value for said merchandise is the appraised value less a commission of 5 percent on the ex-factory price.

Judgment will be entered accordingly.