(Reap. Dec. 10910)

MANHATTAN NOVELTY CORP. *v.* UNITED STATES

Entry No. 47696.

(Decided March 10, 1965)

*Lane, Young & Fox* (*William Whynman* and *William H. Fox* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Glenn E. Harris,* trial attorney), for the defendant.

Ford, Judge: The merchandise which is the subject of the above appeal for reappraisement consists of certain "Marvel" and "Mantone" transistor radios, manufactured and exported from Japan. The merchandise was appraised on the basis of export value, as said value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. The radios were entered at the ex-factory unit prices appearing on the invoice and were appraised at the *per se* unit prices.

The correct statutory basis of valuation is not in issue, since both parties contend for appraisement based upon export value of the involved merchandise. Plaintiff, however, limits its appeal to the amount of the buying commission shown on the invoice.

It is the contention of the importer that said charge is a *bona fide* buying commission and, as such, not dutiable under the principles of *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T.D. 31007; *United States* v. *Case & Co.*, 13 Ct. Cust. Appls. 122, T.D. 40958; *Randbur Co.* v. *United States*, 46 Cust. Ct. 646, Reap. Dec. 9962.

Whether a buying commission is *bona fide* depends upon the facts in each case. *United States* v. *Nelson Bead Co.*, 42 CCPA 175, C.A.D. 590. The evidence herein establishes that an agreement was entered into by and between the plaintiff corporation and Tsurumi Trading Co., Ltd., dated March 1, 1960, wherein the latter agreed to act as buying agent for which it was to receive a buying commission of 5 per centum. A copy of this agreement was attached to an affidavit of Mr. A. Shio and was received in evidence as plaintiff's exhibit 1. Mr. Shio, in his affidavit, stated that his company was to act as buying agent for plaintiff and, as such, was to visit manufacturers in Japan, collect samples of merchandise, and submit them to plaintiff with prices. The affiant also stated that his company was to place orders for such merchandise with the Japanese manufacturers, upon receipt of such orders from plaintiff, and that, in all its dealing with plaintiff, his company acted as buying agent and never as the seller of merchandise out of any stock which his company had purchased for its own account. In addition thereto, an affidavit of one I. Imoda, president of the manufacturing company of the "Mantone" radios, which were sold to plaintiff and sent to Tsurumi Trading Co., Ltd., as per instructions, stated that his company did not make any payment of any kind to Tsurumi Trading Co., Ltd., in connection with the sale and that Tsurumi Trading Co., Ltd., did not have any financial interest in the manufacturing company.

The oral testimony of Mr. Nathan Flomenhaft establishes that his company employed the Tsurumi Trading Co., Ltd., to act as buying agent for plaintiff in the purchase of the imported radios; that, while

the agreement provided for a commission of 5 per centum, due to competition, it was verbally modified to a 2 per centum to 10 per centum commission, depending upon the agreement. In the instant case, the commission amounted to 3 per centum on the ex-factory cost.

Based upon the foregoing, it would seem that a *bona fide* buying commission arrangement existed herein, since the merchandise was purchased through said buying agent who performed certain functions for which he was entitled to compensation and that none of the benefits of this so-called buying commission inured to the benefit of the manufacturer. Since the agreement provides for a 5 percentum buying commission and, in this instance, the invoice indicated a 3 per centum commission was paid, this discrepancy is required to be clarified. The testimony of Mr. Flomenhaft refers to a flexible agreement which ran from 2 per centum to 10 per centum based upon the agreement between the parties. It is apparent from the evidence herein that a *bona fide* arrangement existed between the parties. However, the record is void of any evidence which establishes that a buying commission is included in the *per se* value of the appraisement. Notwithstanding the fact that a mathematical computation of the invoiced prices, plus all charges, equals the appraised values, the court is not in position to allow a deduction of the buying commission from the appraised value, unless and until it has been satisfactorily established that a buying commission was included in the appraised value.

Plaintiff has thus failed to overcome the presumption of correctness attaching to the action of the appraiser.

I, therefore, find as matters of fact:

1. That the merchandise involved herein consists of "Marvel" and "Mantone" transistor radios, exported from Japan.

2. That the instant merchandise was appraised on the basis of export value, as that term is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, at the *per se* values of $3.65 per set, net, packed, for the "Marvel" transistor radios and $3.40 each, net, packed, for the "Mantone" transistor radios.

3. That plaintiff has failed to overcome the presumption of correctness attaching to the action of the appraiser.

Accordingly I conclude as matters of law:

1. That the instant merchandise is properly dutiable on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

2. That such values are the appraised unit values thereof.

Judgment will be entered accordingly.